IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                                                              **PLAINTIFF**

v.                              Case No. 5:13-CR-50087-001

**ANDREW C. JUDKINS**                                                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are Defendant Andrew C. Judkins' Motion for Judgment of Acquittal or New Trial (Doc. 98), filed pursuant to Federal Rules of Criminal Procedure 29(c) and 33, and the Government's Response (Doc. 99). As explained in detail below, the Court finds that Defendant's Motion should be, and hereby is, **DENIED**.

### I.  BACKGROUND

The jury trial of this matter commenced on March 2, 2014 and concluded on March 6, 2014. Judkins faced charges arising from a Third Superseding Indictment (Doc. 37) brought on September 23, 2014, that listed three counts of bank fraud in violation of 18 U.S.C. §§1344 and 2; one count of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §§ 1957 and 2; and one count of laundering monetary instruments in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2. The Third Superseding Indictment also included a forfeiture allegation.

After a five-day trial, the jury returned a unanimous verdict of guilty on Counts One and Two, and not guilty on Counts Three, Four, and Five. After the jury delivered its verdict, Judkins' attorney made an oral motion for acquittal pursuant to Rule 29(c), and on March 10, 2015, the Court entered an Order directing Judkins' counsel to file a brief in

support of her oral Motion. That brief was filed on March 23, 2015, and the Government filed its Response on April 3, 2015.

Judkins' primary argument in favor of acquittal on Counts One and Two is that the evidence presented by the Government was insufficient to sustain convictions on both of those Counts. In the alternative to acquittal, Judkins moves for a new trial on Count One, maintaining that the jury failed to follow the Court's instructions as to this Count. As for Count Two, Judkins contends there was a constructive amendment to the Third Superseding Indictment, and as a result, he was not convicted for the same conduct for which he was indicted. The Court will address each of Judkins' arguments in turn.

## II. LEGAL STANDARD

According to Rule 29(c)(1) of the Federal Rules of Criminal Procedure, a defendant may move for judgment of acquittal within 14 days of a jury verdict if the evidence is insufficient to sustain a conviction. When reviewing the sufficiency of the evidence, the Court must view it "in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005) (quoting *United States v. Espino*, 317 F.3d 788, 791 (8th Cir. 2003). "A conviction may be based on circumstantial as well as direct evidence. The evidence need not exclude every reasonable hypothesis except guilt." *United States v. Tate*, 633 F.3d 624, 628 (8th Cir. 2011) (quoting *United States v. Pizano*, 421 F.3d 707, 719 (8th Cir. 2005). Furthermore, "a jury's guilty verdict should not be overturned lightly," *id.* (citation omitted); therefore, the standard of review as to a claim of insufficient evidence is quite strict.

Judkins' alternative argument is that he is entitled to a new trial on Counts One and Two. According to Rule 33(a), a court "may vacate any judgment and grant a new trial if the interest of justice so requires." "The decision to grant or deny a motion for a new trial based upon the weight of the evidence is within the sound discretion of the trial court," *United States v. Campos*, 306 F.3d 577. 579 (8th Cir. 2002); however, that discretion must be exercised "sparingly and with caution." *Id.* "Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Id.*

### III.  DISCUSSION

### A.  Count One

The Third Superseding Indictment charged Judkins in Count One as follows:

> On or about June 2, 2008, in the Western District of Arkansas, Fayetteville Division and elsewhere, the defendant, ANDREW C. JUDKINS, knowingly executed and caused to be executed a scheme and artifice to obtain money and funds owned by and under the custody and control of First Security Bank, a financial institution whose deposits are insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations and promises; namely, JUDKINS submitted and caused to be submitted to First Security Bank a fake invoice representing A. Camp Equipment's purchase of two 1999 Bell Articulated Trucks in the amount of $500,000.00; all in violation of 18 U.S.C. §§ 1344(2) and 2(b).

(Doc. 37, pp. 4-5).

The jury was instructed that in order to sustain a conviction for bank fraud pursuant to 18 U.S.C. § 1344(2), the Government had the burden of proving beyond a reasonable doubt:

> **First**, that Mr. Judkins knowingly executed and caused to be executed a scheme to obtain moneys and funds owned by and under the custody and control of First Security Bank by means of material false and fraudulent representations;

      **Second**, that Mr. Judkins did so with intent to defraud; and

      **Third**, that First Security Bank was insured by the Federal Deposit Insurance Corporation.

(Doc. 92, p. 10).

    Judkins submits that the evidence presented at trial was insufficient to sustain a conviction on Count One because: (1) the Government failed to prove what is fake about the invoice in question; (2) the Government failed to prove that Judkins knowingly and willfully submitted the fake invoice in question to First Security Bank; (3) the Government failed to prove that Judkins knew the invoice to be fake; and (4) the Government failed to prove that this invoice was material to the bank's lending decision.

    With regard to Judkins' first point, he contends that the invoice in question was not fake. What Judkins appears to be arguing here is that the first element of the offense of bank fraud was not satisfied because the invoice did not contain material false and fraudulent representations. The Court finds that the Government presented sufficient evidence at trial to satisfy the first element of the offense of bank fraud. Specifically, there was evidence that: (1) First Security Bank was unaware at the time it advanced $500,000 to Judkins that the companies named in the invoice—Westtrax Machinery, LLC, and A. Camp Equipment—were both wholly owned by Judkins, and, therefore, the sale represented in the invoice was not an arms-length transaction; (2) the value of the two trucks described in the invoice was inflated, considering the price Judkins actually paid for the trucks at auction, the fact that both trucks were already several years old at the time Judkins purchased them, and the testimony of witnesses who discussed the fair market value of similar used equipment; and (3) the authorizing signature on the invoice does not


belong to a person who actually exists.  Viewing all of this evidence in the light most favorable to the Government, it follows that a reasonable jury could interpret the invoice as fake, or containing material false and fraudulent representations.

Judkins' second and third points appear to go to the second element of the crime of bank fraud, which concerns intent.  The Court finds that the evidence presented at trial was sufficient for a reasonable jury to conclude that Judkins knew the invoice contained material false and fraudulent misrepresentations, and that he willfully submitted the invoice to First Security Bank.  Judkins testified at trial that he owned both Westtrax Machinery, LLC, and A. Camp Equipment, and that he directed Laughlin and Associates, Inc., a company providing administrative services for Westtrax, to create the invoice in question.  Finally, Judkins testified that he directed an employee at A. Camp Equipment to fax the invoice to the bank for the purpose of securing an advance on A. Camp's credit line.  The jury could therefore reasonably believe, from the evidence and testimony presented, that Judkins knew the contents of the invoice and willfully submitted it to the bank with the intent to defraud.

Judkins' last point is that the Government failed to prove that any false and fraudulent representations made in the invoice were "material" to First Security Bank's decision to advance funds.  To support this argument, Judkins directs the Court to the evidence introduced at trial showing that First Security Bank had a practice of extending credit to Judkins without the benefit of much, if any, supporting documentation.  The Court agrees that Judkins established at trial that First Security Bank's lending practices—at least when it came to Judkins, one of the bank's valuable and lucrative clients—were relatively lax, as credit was apparently extended to Judkins on multiple occasions based on his oral

representations alone.  That said, even though the bank did not always require supporting documentation prior to extending credit, there was sufficient evidence presented at trial that the invoice related to Count One actually influenced and was material to the bank's decision to advance Judkins $500,000 from his credit line.

The former Vice President of Commercial Lending for First Security Bank, Robb Roberts, testified that after the bank received the faxed invoice from Judkins, *see* Doc. 98-6, $500,000 was wired from Judkins' floor plan line of credit and deposited into A. Camp Equipment's credit line.  According to Mr. Roberts, the bank relied on the invoice to advance the funds because "[t]he documentation that was supplied seemed to be very genuine.  It was a, of course, an invoice on letterhead from another company, typical of what we really like to see certainly in an ideal situation, almost a bill of sale, if you will, that documents that a true transaction has occurred from a selling and a buying standpoint."

Turning now to Judkins' alternate motion for a new trial as to Count One, this Motion is predicated on his argument that the jury improperly executed its "not guilty" verdict as to Counts Four and Five prior to executing its "guilty" verdict as to Count One.  Judkins is correct that the jury's verdict forms as to Counts Four and Five are dated March 6, 2015 (Doc. 97, pp. 4-5), while the verdict form as to Count One is dated March 7, 2015 (Doc. 97, p. 1).[1]  Due to the nature of the charges, a guilty verdict on Count One—bank fraud—was a condition precedent to a guilty verdict on either Count Four—engaging in monetary transactions in property *derived from the bank fraud described in Count One*—or Count Five—money laundering to conceal the proceeds *of the bank fraud described in Count*

---

[1] The jury deliberated past midnight on March 6, 2015, finally returning a verdict at 1:37 a.m. on March 7, 2015.

*One*. The Court gave special instructions to the jury as to Counts Four and Five, directing the jury to "Not deliberate or return a verdict" on Counts Four or Five "[i]f you found Mr. Judkins 'Not Guilty' on Count One." (Doc. 92, pp. 4-5). These special instructions were given in order to avoid an erroneous verdict on either Count Four or Count Five.

Although a guilty verdict on Count One was necessary prior to a guilty verdict on either Count Four or Five, the inverse was not also true. Verdicts as to Counts Four and/or Five were not conditions precedent to a verdict as to Count One. Accordingly, the jury was free to find Mr. Judkins "not guilty" on the charges of money laundering, as described in Counts Four and Five, prior to finding him "guilty" on the charge of bank fraud in Count One. The Court finds that a new trial on Count One is not warranted.

### B. Count Two

The Third Superseding Indictment charged Judkins in Count Two as follows:

> On or about August 14, 2009, in the Western District of Arkansas, Fayetteville Division and elsewhere, the defendant, ANDREW C. JUDKINS, knowingly executed and caused to be executed a scheme and artifice to defraud First Security Bank, a financial institution insured by the Federal Deposit Insurance Corporation, by delivering and causing to be delivered to the First Security Bank representative conducting an on-site floor plan audit at A. Camp Equipment in Fayetteville, a false and fraudulent rental agreement that showed a Bell Articulated Truck, serial number BA T4633, in which First Security Bank held a $250,000.00 security interest, had been rented to Keepes Construction in Sallisaw, Oklahoma, in order to conceal from First Security Bank that the Bell Articulated Truck, serial number BA T4633, had been sold on July 28, 2008, for $74,000.00, without repaying the bank; all in violation of Title 18 U.S.C. §§ 1344(1) and 2(b).

(Doc. 37, p. 5).

The jury was instructed that in order to sustain a conviction for bank fraud pursuant to 18 U.S.C. § 1344(1), the Government had the burden of proving beyond a reasonable doubt:

>**First**, that Mr. Judkins knowingly executed and caused to be executed a scheme to defraud First Security Bank by means of material false and fraudulent representations concerning a rental agreement for a dump truck with serial number BAT 4633;
>
>**Second**, that Mr. Judkins did so with intent to defraud; and
>
>**Third**, that First Security Bank was insured by the Federal Deposit Insurance Corporation.

(Doc. 92, p. 12).

Count Two charged that Judkins presented a false and fraudulent rental agreement to Adam Rutledge, First Security Bank's president, at the time Mr. Rutledge was performing an on-premises audit of A. Camp Equipment. The Government argued that Judkins knew the dump truck in question was not on the premises because the truck had already been sold. The Government's theory was that Judkins presented the rental agreement to Mr. Rutledge in order to make Mr. Rutledge believe the truck had not been sold but was still in A. Camp Equipment's possession and could validly secure First Security Bank's loan.

Judkins argues there was insufficient evidence presented at trial that he knew the rental agreement was false or fraudulent, and that he intended to conceal the sale of the truck from the bank. In support of his argument in favor of acquittal on Count Two, Judkins points to the testimony of Mr. Rutledge, who agreed on cross-examination that Judkins' signature did not appear on the bill of sale for the truck, and, therefore, there was no way to be sure that Judkins had actual knowledge that the truck had been sold at the time the rental agreement was presented to the bank.

Considering the evidence presented at trial in the light most favorable to the Government, the Court finds that a conviction is supported on Count Two. First, the rental

agreement in question stated that the truck with serial number 4633 was being leased to Keepes Construction in Oklahoma as of February 4, 2009. In actuality, this truck had been sold to Mark Linaweaver of Kansas on July 28, 2008. *See* Government's Exhibit 2. Mr. Rutledge testified at trial that he was not aware the truck had already been sold at the time Judkins hand-delivered the rental agreement to the bank. Further, Mr. Rutledge testified that the bank relied on the rental agreement when considering the value of the collateral securing Judkins' loan. Mr. Rutledge confirmed that on August 1, 2008, a deposit was made in A. Camp Equipment's checking account for the value of the truck that was sold to Mr. Linaweaver. *See* Government's Exhibit 3. It is therefore possible for a reasonable jury to interpret this evidence as showing that Judkins did, in fact, have actual knowledge of the sale of the truck at the time he represented to Mr. Rutledge that the truck was being leased. The jury could also reasonably interpret the evidence as indicating that, when Judkins hand-delivered the rental agreement to the bank, he intended to conceal the fact that the dump truck had already been sold. For these reasons, the Court will not vacate the jury's verdict on Count Two.

As for Judkins' alternate request for a new trial as to Count Two, he contends there was a constructive amendment to the Third Superseding Indictment during the course of the trial. Judkins argues that the Government's proof as to Count Two pertained to a dump truck with serial number BAT 3637, not serial number BAT 4633, as was listed in the Indictment. By presenting proof as to a different serial number, Judkins maintains that the Government was attempting to constructively amend the Indictment. When Judkins' attorney brought this concern to the attention of the Court at the close of the Government's case, the Court considered the issue and determined that any potential confusion could

be corrected with specific jury instructions naming BAT 4633, and no other serial number, for Count Two. The Court then presented the parties with draft Final Instruction 6, which summarized the allegations in the Third Superseding Indictment as to all Counts, and specifically referred to Count Two as "a scheme to defraud . . . regarding the location and status of one of the dump trucks, serial number BAT 4633"; and Final Instruction 8-A, which listed the elements of bank fraud, as charged in Count Two, with reference to "a dump truck with serial number BAT 4633." *See* Doc. 92, pp. 8, 12. Neither party objected to these draft Final Instructions, and they were ultimately read to the jury just prior to closing arguments.

The Court continues to believe that there was no constructive amendment to the Third Superseding Indictment, and any possible confusion as to the serial number of the truck at issue in Count Two was addressed by the Court in its jury instructions. Accordingly, a new trial is not warranted as to Count Two.

## IV. CONCLUSION

Defendant's Motion for Judgment of Acquittal or New Trial (Doc. 98) is **DENIED**.

**IT IS SO ORDERED** this **14th** day of April, 2015.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE